UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

Rodney Shepherd, Esq.                                         Misc. No: 22-00205-TPA
_____

                                                                             In proceedings under Chapter 7
United States Trustee,
            MOVANT,                                              Docket No. 6

            v.                                                              (Related to docket nos. 2,5)

RODNEY D. SHEPHERD, ESQ.,                        Hearing Date/Time:

            RESPONDENT                                        April 20, 2022, 2:00 p.m.


RESPONSE TO MOTION TO EXAMINE COMPENSATION PAID
TO ATTORNEY FOR THE DEBTORS' PURSUANT TO 11 U.S.C. §329

Rodney D. Shepherd, Esq. ("Mr. Shepherd"), hereby responds to the Motion To Examine Compensation Paid To Attorney For The Debtor's Pursuant to 11 U.S.C. §329, filed by the United States Trustee (the "UST") at ECF docket number 2 on March 4, 2022 (the "Motion"), and for the reasons set forth below, requests that the Court deny the relief requested in the Motion.  In support of this Response, Mr. Shepherd submits the following:

¶1 – Admitted.

¶2 – Admitted.

¶3 – Admitted.

¶4 – Admitted.

STATEMENT OF FACTS

¶5 – Admitted.

¶6 – Admitted.

¶7 – Admitted.

1

¶8 – Denied.  Mr. Shepherd affirmatively alleges that Form B2030 has been amended to disclose the fee agreement with Fresh Start Funding ("FSF").  The fee arrangement was not initially disclosed because no payment arrangement was made prior to the filing of the Bankruptcy.  Moreover, Mr. Shepherd affirmatively alleges that his agreement with FSF does not constitute factoring.

¶9 - Admitted.  Gaither Coleman wished to finance the legal fee over a 12 month period.  The legal fee was $1,700.00. This was the amount that was being charged for the legal services. In addition to the legal fee of the Pre-Filing Agreement it clearly states that the fee for these services is $2,220.00. "This fee includes the $335.00 filing fee (unless you pay the filing fee in advance)". The Post-Filing Agreement shows that the Court Filing Fee is being financed.

¶10 – Admitted.

¶11 – Admitted.

¶12 – Admitted in part and denied in part.  It is not exactly correct that the bifurcation of the fees has not been disclosed.  In all the cases at issue that have been reopened, Form B2030 has been amended to disclose the arrangement with FSF, and any new cases that have been filed that involve FSF financing, have disclosed the arrangement on Form B2030. All Pre-Filing and Post-Filing Agreements on all cases have been provided to the Office of the U.S. Trustee. It is true that a legal fee of $1,700.00 is charged if the Debtor wishes to finance or bifurcate the fee.

¶13 – Admitted in part and denied in part.  Debtors are made aware of the fact that in order to finance the fee over a 12 month period that the overall fee will be greater.  Moreover, for bifurcated cases, the post-petition engagement agreement with clients provides that Mr. Shepherd will render, if necessary, additional services for the post-petition flat fee (the "Supplemental Post-Petition

2

Services"), in contrast to those services included in a pre-petition flat fee agreement for non-bifurcated cases.

¶14 – Admitted.

¶15 – Mr. Shepherd admits that Section 329(b) authorizes the Court to review all compensation received by a debtor's attorney and to cancel the agreement if the compensation thereunder exceeds the reasonable value of those services, and/or order the return of funds for any compensation that exceeds the value of such services.  Mr. Shepherd denies any implication that such relief is warranted or justified in this case.

¶16 – Admitted, but Mr. Shepherd denies any implication that disgorgement as alleged in ¶16 is warranted or justified in this case.

¶17 – Admitted.

¶18 – Admitted.  Mr. Shepherd denies any implication that the examples of disqualifying conduct described in ¶18 are present in this case in any meaningful way that would warrant or justify the relief requested in the Motion.

¶19 – Admitted. Mr. Shepherd denies any implication that the examples of inappropriate or disqualifying conduct described in ¶19 are present in this case in any meaningful way that would warrant or justify the relief requested in the Motion.

¶20 – Mr. Shepherd admits the content of the judicial opinions described and quoted in ¶20.  Mr. Shepherd denies any assertion or implication that those opinions as applied to this case, mandate, warrant, or justify the relief requested in the Motion.

¶21 - Mr. Shepherd admits the content of the judicial opinions described and quoted in ¶21.  Mr. Shepherd denies any assertion or implication that those opinions as applied to this case, mandate, warrant, or justify the relief requested in the Motion.

¶22 - Mr. Shepherd admits the content of the judicial opinions described and quoted in ¶22. Mr. Shepherd denies the assertion that the financing agreement he entered into with FSF is similar to that utilized in the cited cases, to a degree that would justify either the consequences imposed in those cases, or the relief requested in the Motion. Mr. Shepherd also denies any assertion or implication that those opinions as applied to this case, mandate, warrant, or justify the relief requested in the Motion.

¶23 - Mr. Shepherd admits the content of the judicial opinion described and quoted in ¶23. Mr. Shepherd denies any implication that the opinion, including its holding and rationale, as applied to this case, would mandate, warrant, or justify the relief requested in the Motion.

¶24 - Mr. Shepherd admits the content of the judicial opinion described and quoted in ¶23. Mr. Shepherd denies any implication that the opinion, including its holding and rationale, as applied to this case, would mandate, warrant, or justify the relief requested in the Motion.

¶25 – Mr. Shepherd denies that his financial arrangement with FSF constitutes a factoring agreement. Mr. Shepherd has disclosed the fees he charged debtors. To the extent that Mr. Shepherd's disclosures were otherwise inadequate, he has amended his disclosures such that there currently is no failure to adequately disclose all required information.

¶26 – Mr. Shepherd admits that certain disclosures were inaccurate, but affirmatively asserts that all disclosures have been amended and corrected such that as of the filing of this Response, all disclosures are accurate.

¶27 – Denied.

¶28 – Admitted.

¶29 – Mr. Shepherd admits the figures and "math" asserted in ¶29, but affirmatively asserts that the relevant consideration is whether the amount he

charged his clients was reasonable, and Mr. Shepherd asserts that the amount was reasonable.

¶30 – Mr. Shepherd admits that certain figures in the revised disclosure may require further adjustment, but affirmatively asserts that the relevant consideration is whether the amount he charged his clients was reasonable, and Mr. Shepherd asserts that the amount was reasonable.

¶31 – Mr. Shepherd admits the content of the judicial opinion cited and quoted in ¶31, but denies that his actions fit the description of the inappropriate conduct described in ¶31.

¶32 – Mr. Shepherd denies the characterization of "significantly more" asserted in ¶32, and affirmatively asserts that the relevant consideration is whether the amount he charged his clients was reasonable, and Mr. Shepherd asserts that the amount was reasonable.

¶33 – Mr. Shepherd admits the mathematical calculation reflected in ¶33, but affirmatively asserts that the relevant consideration is whether the amount he charged his clients was reasonable, and Mr. Shepherd asserts that the amount was reasonable.

¶34 – Mr. Shepherd admits the content of the judicial opinion described and quoted in ¶34. Mr. Shepherd denies any assertion or implication that the opinion, including its holding and rationale, as applied to this case, would mandate, warrant, or justify the consequences imposed in the cited opinion, or the relief requested in the Motion.

¶35 - Mr. Shepherd admits the content of the judicial opinion described and quoted in ¶35. Mr. Shepherd denies any assertion or implication that the opinion, including its holding and rationale, as applied to this case, would mandate, warrant, or justify the consequences imposed in the cited opinion, or the relief requested in the Motion.

¶36 – Admitted in part, and denied in part. Mr. Shepherd admits that Statements & Schedules must be prepared regardless of the fee structure. Mr. Shepherd denies the assertions of ¶36 that purport to articulate an exclusive basis for the flat fee charged under various fee structures. Mr. Shepherd affirmatively asserts that the standard justifying fees in general is reasonableness, not specific amounts tied to specific tasks as ¶36 appears to allege.

REASONABLENESS OF FEES

In addition to the specific admissions, denials, and other allegations set forth above, Mr. Shepherd submits the following:

The UST's challenge to the reasonableness of Mr. Shepherd's fees fails as a matter of law because the Motion does not even discuss the controlling lodestar standard, let alone apply that standard to the facts of this case. Bankruptcy Rule 2017, which implements Section 329 of the Bankruptcy Code, expressly authorizes the Court to analyze and determine whether any payment made to a debtor's attorney is reasonable or excessive, whether such agreement is made before the order for relief (Rule 2017(a)), or after the order for relief (Rule 2017(b)), so long as such services are "in any way related to the case." See *Fed. R. Bankr. P.* 2017.

Reasonableness for purposes of Section 329 is determined with reference to the standard imposed by Section 330. See, e.g., *Am. Law Ctr., PC v. Stanley (In re Jastrem)*, 253 F.3d 442, 443 (9th Cir. 2001) (invoking § 330(a)(3) in review of § 329(b) order). Under Section 330, the bankruptcy court must "consider the nature, the extent and the value of such services, taking into account all relevant factors." 11 U.S.C. § 330(a)(3). "Within the boundaries of Section 330, courts usually use the lodestar standard as a means for determining the reasonableness of compensation, which is calculated by multiplying a reasonable number of hours spent on a case by a reasonable hourly rate." See *In re Lexington Hearth*

*Lamp & Leisure, LLC,* 402 B.R. 135 at 140-141 (Bankr. M.D. N.C. 2009) (citing *In re Kieffer,* 306 B.R. 197, 205 (Bankr.N.D.Ohio 2004)).

  The Supreme Court has strongly embraced the lodestar standard for determining a reasonable attorney fee because it "is readily administrable;" it "cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." See *Perdue v. Kenny A.,* 559 U.S. 542, 130 S.Ct. 1662, 1672 (2010). In order to conduct a lodestar analysis, a trial judge must determine "the prevailing market rates in the relevant community," because the test was "[d]eveloped after the practice of hourly billing had become widespread." *Id.* The lodestar method thus produces an award that an "attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Id.*

  Here, the UST does not apply the lodestar standard to the facts of this case, and instead focuses on the difference between the pay-over-time fee actually charged in this case, and the prepaid option that the debtor was offered, but declined. The appropriate focus is on the lodestar value of the fee actually charged, not on an option the debtor declined (and declined because it was not practically available to that debtor due to their circumstances). See Cf., *In re Hazlett,* No. 16-30360 at 2, 21 (Bankr. D. Utah April 10, 2019) (attorney's $2000 post-petition fee in a bifurcated case deemed reasonable despite being nearly double the $1,200 prepaid fee that a competitor offered to the same debtor). Here, the post-petition fee to bifurcate the case was $1700 versus a $1200 prepaid fee – a difference of $500.

  Moreover, the UST's argument suggests that Mr. Shepherd may not charge different clients different fees, a position that has no basis in the Code or the ethics rules. The UST essentially suggests that Mr. Shepherd must establish a single, universal flat fee for chapter 7 work which must be offered to every client,

7

and which cannot change over time or under different circumstances. That position is illogical and ignores local practice. Within the boundary of "reasonableness," an attorney may charge a given client whatever the attorney and client agree. Under Local Rule 2016-1(f), in chapter 13 cases debtor's counsel may charge any fee that they choose so long as it below the approved "no-look" fee, which establishes presumptive reasonableness. In those cases, there is no inquiry as to why different chapter 13 cases might justify different fees, so long as the fee actually charged is below the presumptive threshold.

Even if this Court were to consider the market range of chapter 7 flat fees to assist in determining a reasonable, market hourly rate, comparing pay-over-time flat fees to prepaid flat fees is an "apples to oranges" comparison. Because both attorneys and debtors are under constraints in the traditional engagement structure, prepaid fees cannot be considered an indication of the fair market value of a chapter 7 debtor attorney's time. Debtors often are under unimaginable financial pressure before obtaining relief in a bankruptcy and are highly price-sensitive when faced with the nearly insurmountable task of accumulating hundreds or even thousands of dollars before they can obtain relief. Likewise, attorneys who employ a single, prepetition engagement agreement must collect their entire fee in advance or risk the unpaid balance being discharged—and are trying to collect these fees from people under severe financial distress. Consequently, prepaid chapter 7 services are highly commoditized, and attorneys are left to compete solely on price.

One need only consider the effective hourly rate that Mr. Shepherd has or might have charged in the past to understand that he rarely receives his normal hourly rate for chapter 7 work under a traditional, prepaid structure. Once an alternative is presented for debtors to make payments over time after their bankruptcy is filed, attorneys and debtors are liberated from the constraints that

commoditize attorneys and artificially drive down their fees. Debtors likewise are provided with a much more feasible way to pay for and have the benefit of thorough representation.

There are also good reasons for a difference in the fee when Mr. Shepherd bifurcates the engagement and allows a debtor to pay over time. Mr. Shepherd's fee disclosures to the Court explain the different work, risks and costs associated with bifurcating the engagement. Similar explanations exist in his client agreements as well.

In applying the lodestar analysis to a chapter 7 flat fee, consideration also must be given to the value of the services that the attorney is *committing* to provide, whether such services end up being necessary in a particular case. Local district rules such as Local Rule 2016-1(g) generally require an attorney to stand ready to provide all needed services in the case, whether they were specifically predicted or accounted for in setting a flat fee. It is only fair, therefore, to consider the value of the risk to the attorney that any or all of those services may be required in any given case. The Court should note that under the fee agreement with his clients in this case, Mr. Shepherd agreed to perform, if necessary, additional services beyond those included in the pre-petition flat fee option.

Moreover, it is ethically permissible to pass on a financing charge when a client is aware of it and gives their informed consent, so long as the overall fee is reasonable. Some clients may be unable to afford lawyers' fees absent some form of accommodation or assistance. For example, a criminal defense or family law client may be unable to afford a lawyer's flat fee at the outset of a representation. The client may be able to afford the lawyer's fee, however, if the client can finance the fee through a loan from a third-party. Or, a client may simply wish to finance a lawyer's fee rather than pay a lump sum. See Formal Opinion 484, ABA

Standing Committee on Ethics and Professional Responsibility, at 1. The attorney's cost of financing can be passed on to a client with adequate disclosure and so long as the overall fee remains reasonable. Id. at 10-11.

The UST characterizes the prepetition cash discount Mr. Shepherd offered his clients as creating a situation where the "full fee" cannot be considered reasonable because some debtors pay less. But debtors regularly pay attorneys a range of fees.

All the foregoing leads back to the "bottom line" from a legal perspective: if the total, flat fee charged these debtors is reasonable compared to the hourly value of Mr. Shepherd's time, the flat fee satisfies §329 regardless of what costs and considerations played a part in formulating the fee. This clearly is a factual matter that will have to be developed, but Mr. Shepherd is confident that the lodestar value of the services he committed to provide these debtors satisfies §329, and will adduce evidence of this at an evidentiary hearing on the UST's Motion.

For all the foregoing reasons, Mr. Shepherd requests that the Court deny the Motion and not grant the relief requested therein.

Respectfully submitted this 5th day of April, 2022.[1]

/s/ *Rodney D. Shepherd*
Rodney D. Shepherd, Esq.
PA I.D. 56914
rodsheph@cs.com
2403 Sidney Street
Suite 208
Pittsburgh, PA 15203
412-471-9670

---

[1] This Response was initially filed on April 1, 2022 at ECF docket number 6. On April 4, 2022 at ECF docket number 7, a corrective entry was docketed requiring that this Response be refiled in a fully flattened and text-searchable format as provided by W. Pa. LBR 5005-13(d). With apologies to the Court, this re-filed version of the Response is substantively identical to the initial filing at ECF docket number 6 (except for the date), and its format complies with W. Pa. LBR 5005-13(d).